**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**




ATTORNEY FOR APPELLANT:

**JENNIFER A. JOAS**
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE COURT OF APPEALS OF INDIANA

WILLIAM C. HOFFMAN, JR.,

Appellant-Defendant,

vs.

STATE OF INDIANA,

Appellee-Plaintiff.

No. 15A01-1309-CR-401

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-1206-FA-10

**July 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

William C. Hoffman, Jr. ("Hoffman") was convicted of Attempted Aggravated Battery, a Class B felony,[1] two counts of Intimidation, one as a Class C felony and one as a Class D felony,[2] and Pointing a Firearm, as a Class D felony.[3] He challenges his conviction for Attempted Aggravated Battery and his aggregate thirty-year sentence. We affirm.

## Issues

Hoffman presents two issues for review:

I. Whether there is sufficient evidence to support his conviction for Attempted Aggravated Battery; and

II. Whether his aggregate thirty-year sentence is inappropriate.

## Facts and Procedural History

During June of 2012, Hoffman lived in a Lawrenceburg, Indiana residence with his wife, Rhonda, Rhonda's teenage daughter D.S., D.S.'s boyfriend Adam, and several children. During the evening of June 7, 2012, Hoffman and Rhonda argued and Hoffman grabbed Rhonda by the neck. At that time, D.S. and Adam were returning home and Adam heard Rhonda call out for help. Adam confronted Hoffman as to what he was doing and Hoffman asked Adam if he "wanted to see Rhonda turn purple." (Tr. 425.) Adam observed Hoffman move his hand toward Rhonda's throat and he called out to D.S. to summon police.

---

[1] Ind. Code § 35-42-2-1.5, § 35-41-5-1.

[2] I.C. § 35-45-2-1(b).

[3] I.C. § 35-47-4-3(b).

Rhonda escaped Hoffman's grasp and ran outside. Hoffman followed, threatening that, if police came, "people were going to be dead" and asking, "if a cop comes, how many people do you think are dead before they get here." (Tr. 455, 443.)[4] Neighbor Mary Pamplin ("Pamplin") encouraged Hoffman to look at his son and Hoffman replied, "I don't care, I brought him into the world, I'll take him out." (Tr. 453.) Pamplin saw that Hoffman had a gun in his waistband and guided Hoffman's son inside a nearby apartment. D.S. and Adam ran to the police station, taking another of Rhonda's children with them. Hoffman went back inside his house.

When Officers Roger Houston and Ryan Martini of the Lawrenceburg Police Department arrived, at around 8:45 p.m., Rhonda reported that Hoffman was "trying to kill her." (Tr. 318.) She advised that Hoffman "had pointed a gun." (Tr. 355.) Rhonda appeared intoxicated and very distraught. Officers Morgan Hedrick, Jacob Jump, Daniel Craig, Brian Potts, and Dan Rosengarn, and Sergeant Ken Losenkamp responded to a call for backup.

Officer Houston saw Hoffman at an upstairs window and motioned for him to come to the door. Hoffman shook his head "no" and moved from the window. (Tr. 359.) Officer Houston then knocked on the door and requested that Hoffman come outside. Hoffman refused and began to yell obscenities. Standing in the threshold of the door, with his right hand behind his back, Hoffman insisted that the officers should talk to his wife and "see what

[4] Adam and D.S. testified that Hoffman claimed seven people would be dead (an apparent reference to his family) while Pamplin testified that Hoffman threatened to kill nine people. Officer Houston testified that Hoffman later "pictured himself dying taking seventeen people with him." (Tr. 471.)

the f**k her problem is and why the m*****f*****g police are at my house before I get angry." (Ex. 4, pg. 32.) He explained that he had guns laid out across the stairwell and warned, "If I become angry, things will not be pretty," and "I see too many f*****g people looking, I'm going to have to give them something to see." (Ex. 4, pgs. 32-33.)

Hoffman insisted that an officer could not enter his home unless he showed Hoffman that he was not armed. However, he taunted the officer, saying "F*****g P***y. P***y. Here kitty, kitty, kitty, kitty, kitty." (Ex. 4, pg. 45.) At times, Hoffman demanded that officers take their hands off their guns and put their hands on their heads. During the exchange, Hoffman pointed a gun at Officer Hedrick "for a few seconds," brought it down, and placed it in his waist band. (Tr. 377.)

Hoffman's parents arrived at his residence. His father, a retired Lawrenceburg police officer, began to plead with Hoffman to end the situation. However, Hoffman greeted his arrival by cursing, speaking belligerently, and asking his father for an assault rifle. Hoffman yelled out the window, "if anybody comes here, I'll f**king kill them." (Tr. 511.) Hoffman's mother made contact with him by cellphone and Hoffman was overheard telling her, "let them all come in, I'll take them all with me." (Tr. 509.)

Officers staked out positions in the yard. After some time had passed, around 11:00 p.m., officers heard a gunshot inside the house. A few minutes later, Hoffman pointed a gun out the second-story window and fired at Officers Jump and Craig. The officers returned fire. Believing that Hoffman had been struck, Officer Jump called for the other officers to

cease fire. After a break in the gunfire, Hoffman fired more shots outside a window on the west side of the house. These shots went toward Officer Potts' location.

At around 3:00 a.m., an Indiana State Police emergency response team used a robot to employ a Taser against Hoffman so that he could be extracted from the house. Hoffman was transported to the hospital, where it was discovered that he had a loaded firearm and over fifty rounds of ammunition in the pockets of his shorts. Inside Hoffman's residence, police recovered ten fired casings from a semiautomatic pistol, three casings from a revolver, and three live rounds.

Hoffman was charged with Attempted Murder, Attempted Aggravated Battery, Attempted Battery, two counts of Intimidation,[5] Pointing a Firearm,[6] Criminal Recklessness, Attempted Strangulation, and Domestic Battery. A jury acquitted Hoffman of Attempted Strangulation. The jury was unable to reach verdicts on the Attempted Murder and Domestic Battery counts but convicted Hoffman of the remaining charges. The trial court entered judgments of conviction for Attempted Aggravated Battery, Pointing a Firearm, and two counts of Intimidation. Hoffman was sentenced to consecutive terms of twenty years for Aggravated Battery, eight years for Intimidation as a Class C felony, and two years for Pointing a Firearm. He received a concurrent sentence of one year for Intimidation as a Class D felony. Thus, his aggregate sentence is thirty years. Hoffman now appeals.

---

[5] One count alleged that Hoffman threatened to shoot officers in retaliation for their intervention in a domestic dispute. A second count alleged that Hoffman threatened to kill Rhonda, D.S. and Adam in retaliation for their calling 9-1-1.

[6] The State alleged that Hoffman pointed a firearm at Officer Morgan Hedrick.

## Discussion and Decision

Sufficiency of the Evidence

Hoffman challenges the sufficiency of the evidence to support his conviction for Attempted Aggravated Battery. Pursuant to Indiana Code section 35-41-5-1(a), a person attempts to commit a crime when, acting with the culpability required for commission of that crime, he engages in conduct that constitutes a substantial step toward commission of the crime.

A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes serious permanent disfigurement, protracted loss or impairment of the function of a bodily member or organ or the loss of a fetus, commits aggravated battery, a Class B felony. I.C. § 35-42-2-1.5.

Accordingly, to support a conviction for attempted aggravated battery, the evidence must establish, beyond a reasonable doubt, that Hoffman intentionally or knowingly took a substantial step toward infliction of an aggravated battery upon the officers. Hoffman does not deny that he committed an overt act by firing his weapons toward officers Losenkamp, Rosengarn, Jump, Craig, and/or Potts, as charged. Rather, he claims the State failed to prove beyond a reasonable doubt that he intended to strike any of them.

When reviewing the sufficiency of the evidence to support a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm the conviction unless no

reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id.

Intent is a mental function and therefore, absent an admission, the fact-finder must resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences thereof, a showing or inference of intent to commit that conduct exists. Isom v. State, 589 N.E.2d 245, 247 (Ind. Ct. App. 1992), trans. denied. Discharging a weapon in the direction of a victim is substantial evidence from which a jury can infer intent to kill. Leon v. State, 525 N.E.2d 331, 332 (Ind. 1988).

The State presented testimony that Hoffman repeatedly taunted and threatened to kill responding police officers. With knowledge[7] that officers were stationed around his house, Hoffman placed his weapon across a windowsill, took aim, and fired multiple shots. His semiautomatic weapon jammed. He then used a second weapon to fire shots from the other side of the house. At the hospital, Hoffman was found to have a loaded weapon and more than fifty rounds of ammunition on his person. He had complained multiple times that his handcuffs were too tight and needed to be loosened, suggesting that he may have desired access to the weapon.

There is sufficient evidence from which the jury could infer that Hoffman intended to commit aggravated battery upon the officers when he fired bullets toward them.

## Sentencing

[7] Hoffman admitted during cross-examination that he knew officers were outside his house.

Upon conviction of a Class B felony, Hoffman faced a sentencing range of six years to twenty years, with the advisory sentence being ten years. See Ind. Code § 35-50-2-5. Upon conviction of a Class C felony, he faced a sentencing range of two years to eight years, with the advisory sentence being four years. See Ind. Code § 35-50-2-6. Upon conviction of a Class D felony, he faced a sentence of six months to three years, with one and one-half years as the advisory. See Ind. Code § 35-50-2-7.

Hoffman received an aggregate sentence of thirty years. When imposing this sentence, the trial court found no mitigators but considered Hoffman's criminal history and the particular circumstances of the crimes to be aggravating. The trial court observed that Hoffman had endangered many persons and caused law enforcement to take extreme efforts to de-escalate the situation but yet continued to blame police officers.

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Indiana Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of such review is to attempt to leaven the outliers. Id. at 1225. A defendant '"must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of

review.”’ Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007) (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The nature of Hoffman’s offenses is that he threatened family members for summoning police in response to his conduct against his wife. He then expanded his threats to include police officers, taunting them to enter his house and be killed. Ultimately, he engaged police in a protracted standoff, fired multiple shots from multiple weapons in their direction, and refused to surrender until a robot delivered an electrical charge to him.

As to the character of the offender, Hoffman has a criminal history consisting of remote alcohol-related offenses. However, he has been found to have violated probation on three occasions. Also, as the trial court observed, Hoffman continued to blame police for the escalation of events instead of placing responsibility upon himself for the endangerment of many lives.

Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

## Conclusion

There is sufficient evidence of Hoffman’s intent to strike officers with bullets. His thirty-year sentence is not inappropriate.

Affirmed.

KIRSCH, J., and MAY, J., concur.